UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                  CRIMINAL ACTION

VERSUS                                            NO. 09-391

DEWAYNE COOPER                        SECTION "R" (5)

## ORDER AND REASONS

The Court has received defendant Dewayne Cooper's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[1]   The government opposes the motion.[2]

Cooper was charged with conspiring to distribute heroin and cocaine, and illegally possessing a firearm.[3]   He pleaded guilty to the drug conspiracy, as well as to a bill of information enhancing his sentence based on a single previous drug conviction.[4]   On October 19, 2011, Cooper was sentenced to 240 months' imprisonment.[5]   Cooper is imprisoned at FCI Oakdale I, and his expected release date is June 17, 2027.[6]

---

[1]    R. Doc. 1050.
[2]    R. Doc. 1054.
[3]    *See* R. Doc. 251 at 2, 5.
[4]    *See* R. Doc. 351 at 1; *see also* R. Doc. 323.
[5]    *See* R. Doc. 577 at 2.
[6]    *See* *Inmate Locator, Federal Bureau of Prisons,* https://www.bop.gov/inmateloc/ (last visited May 20, 2020).

Cooper now moves for a compassionate release based on the "extraordinary and compelling reason" of the "coronavirus outbreak."[7] Specifically, he contends that he "is unable to provide self-care," because he "is unable to practice effective social distancing and clean hygiene to minimize the risk of exposure."[8]  He further argues that he "is a non-violent offender and poses no threat to the community," that his family will receive him if released, that he has "participated in numerous vocational training programs," and that he has "guaranteed, gainful employment" awaiting him.[9]  Cooper also claims that if he had "been sentenced today," he would be "eligible to be placed in home-confinement now," on account of the First Step Act's reducing mandatory minimum sentences.[10]

The Court does not find compassionate release appropriate in these circumstances.  First, defendant does not appear to have exhausted his administrative remedies with the BOP.[11]   But the Compassionate Release Statute reads:

---

[7]     See R. Doc. 1050 at 2.
[8]     See id. at 3.
[9]     See id. at 4.
[10]    See id. at 4-5.
[11]    As the government notes: "Cooper does not assert in his motion that he previously sought relief through BOP administrative channels by requesting compassionate release on COVID-19 grounds from the warden." See R. Doc. 1054 at 3.

> The Court may not modify a term of imprisonment once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier . . . .

18 U.S.C. § 3582(c); *see also United States v. Fisher*, No. 118CR00118MRWCM1, 2020 WL 2411796, at *2 (W.D.N.C. May 12, 2020) (collecting cases standing for the proposition that many "courts . . . continue[] to require the full exhaustion of administrative remedies before considering motions for compassionate release related to the COVID-19 pandemic"); *United States v. James*, No. 13-85, slip op. at 12 (Apr. 16, 2020) (stating that "the overwhelming majority of courts" have found "[t]he exhaustion requirements under Section 3582(c)(1)(A) . . . mandatory during the COVID-19 pandemic"). Regardless of whether this failure would require the Court to reject Cooper's motion as a matter of course—on either jurisdiction or claim-processing grounds—the BOP's apparent lack of opportunity to address defendant's request is significant to the Court's decision.

Moreover, Cooper has not made a showing that the BOP is unable to address his situation adequately. The Court recognizes that FCI Oakdale,

3

where Cooper is housed, is one of the BOP facilities that is "experiencing significant levels of infection."[12]   But the Attorney General not only has generally instructed the BOP to prioritize granting home confinement on account of COVID-19,[13] but also has specifically instructed the BOP to expand home release in facilities affected by COVID-19, including Oakdale.[14] Indeed, the Attorney General directed the BOP to "to immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates incarcerated at FCI Oakdale," and "[f]or all inmates whom [the BOP] deem[s] suitable candidates for home confinement, . . . to immediately process them for transfer."[15]

Furthermore, the BOP is taking its own measures to address the disease's impact.[16]   To do so, though, the BOP must use its expertise to

---

[12]    Attorney General, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* 1 (Apr. 3, 2020) [hereinafter *Increasing Use of Home Confinement*], https://www.justice.gov/file/1266661/download.

[13]    *See* Attorney General, *Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic* 1 (Mar. 26, 2020), https://www.bop.gov/resources/news/pdfs/20200405_covid-19_home_confinement.pdf.

[14]    *See Increasing Use of Home Confinement*, *supra* note 12, at 1-2.

[15]    *Increasing Use of Home Confinement*, *supra* note 12, at 2.

[16]    *See, e.g.*, Federal Bureau of Prisons, *Update on COVID-19 and Home Confinement* (Apr. 5, 2020) (stating that "[i]n response to COVID-19, the Bureau of Prisons (BOP) has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures"),

consider both the effect of COVID-19 on individual prisoners, as well as the system-wide consequences of releasing prisoners as a response. The BOP, therefore, occupies a better position than the Court at this stage to determine whether Cooper should be released from prison on account of the potential impact of COVID-19.

Second, Cooper has not shown that he satisfies the other requirements for compassionate release. For instance, a reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The application notes to the relevant policy statement identify three discrete "extraordinary and compelling reasons" that could warrant a reduction: a "terminal illness" or a condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (b) "[a]ge"—starting at age 65; and (c) "[f]amily [c]ircumstances." *See* U.S.S.G. § 1B1.13, application note 1 (emphasis removed). The Guidelines also identify a category of "[o]ther [r]easons," but

---

https://www.bop.gov/resources/news/20200405_covid19_home_ confinement.jsp; *see also, e.g.*, Federal Bureau of Prisons, *BOP Implementing Modified Operations*, https://www.bop.gov/coronavirus/ covid19_status.jsp (last visited May 20, 2020).

state that such reasons are "[a]s determined by the Director of the Bureau of Prisons." *See id.* § 1B1.13, application note 1(D) (emphasis removed).

Defendant presents a variety of arguments in support of his release, but he does not identify how he fits into any of these Guidelines categories. *See, e.g.*, *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) ("Defendant cites no authority for the proposition that the *fear* of contracting a communicable disease warrants a sentence modification."). Insofar as Cooper's arguments may relate to the danger he presents to the community, *see* U.S.S.G. § 1B1.13(2) (instructing courts, before granting compassionate release, to assess whether a defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"), the Court notes that the government represents that "the BOP has concluded that Cooper is not eligible for [home confinement] due to his extensive history of violence."[17]

Finally, outside the Compassionate Release Statute, the Court also has not identified grounds for releasing Cooper early. Insofar as Cooper asks the Court to designate him for home confinement, the Court cannot order that relief. Rather, the decision to order home confinement rests solely with the Bureau of Prisons. *See* 18 U.S.C. § 3621(b) (providing that the "Bureau of

---

[17]    *See* R. Doc. 1054 at 3.

Prisons shall designate the place of the prisoner's imprisonment" and that "a designation of a place of imprisonment . . . is not reviewable by any court"); *United States v. Voda*, 994 F.2d 149, 151 (5th Cir. 1993) ("[M]any cases have addressed the authority of a judge to specify the place of incarceration[,]" and "[t]hese cases hold that a court may recommend that a sentence . . . be served in a particular prison or jail, but that only the Bureau of Prisons has the actual authority to designate the place of incarceration.").

Similarly, the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, 134 Stat. 281 (2020), provides that "the *Director of the Bureau [of Prisons]* may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code." *See id.* § 12003(b)(2) (emphasis added); 18 U.S.C. § 3624(c)(1)-(2) ("The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months . . . under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry," including "home confinement"). Numerous courts have therefore found that a court lacks jurisdiction to order home confinement under the CARES Act. *See, e.g.*, *United States v. Gentry*, No. CR 5:03-50033-05, 2020 WL 2131001, at

*5-6 (W.D. La. May 5, 2020) (finding the court lacked jurisdiction to order home confinement and collecting cases with the same finding); *see also United States v. Mabe*, No. 3:15-CR-133, 2020 U.S. Dist. LEXIS 66269, at *1 (E.D. Tenn. Apr. 15, 2020) ("This Court . . . does not have power to grant relief under Section 12003 of the CARES Act.").

Likewise, Cooper has not shown any authority that would allow the Court to grant him a furlough. The relevant statute states that, if certain conditions are met, "[t]he Bureau of Prisons may release a prisoner from the place of his imprisonment for a limited period." *See* 18 U.S.C. § 3622. The plain text of the statute, therefore, identifies furlough as a decision for the BOP, not the Court.

The Court also does not see how the provisions of the First Step Act of 2018 addressing mandatory minimum sentences benefit Cooper here. Section 404 of the First Step Act states: "A court that imposed a sentence for a covered offense may. . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018) (citation omitted). The Fair Sentencing Act increased the quantity of crack cocaine that triggered mandatory minimum penalties and eliminated the statutory mandatory minimum sentence for simple possession of crack

8

cocaine.  *See* Pub. L. No. 111-220, §§ 2-3, 124 Stat. 2372, 2372 (2010); 21 U.S.C. § 841(b)(1).  But Cooper pleaded guilty to an offense involving heroin and cocaine hydrochloride.[18]  As such, this provision of the First Step Act also does not provide a basis for reducing Cooper's sentence.

> For the foregoing reasons, the Court DENIES defendant's motion.

> New Orleans, Louisiana, this __21st__ day of May, 2020.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[18]     *See* R. Doc. 351 at 1.

9